**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                   Plaintiff,                    **REPORT AND
RECOMMENDATION**

        - against -

                                                                  08-CV-2702 (KAM) (JO)

IRVING GELLERSTEIN, et al.,

                                 Defendants.
----------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

Plaintiff United States of America has accused defendants Irving and Norma Gellerstein and Irene Greenfeder of, among other things, owing money to the government for their failure to pay federal taxes. Docket Entry ("DE") 1 (Complaint). However, in the nearly two-year period of time since it filed the Complaint on July 7, 2008, the government has twice allowed the case to fall dormant, most recently failing to seek a default judgment or take other action to prosecute its case. It has done so despite a warning of the possible consequences of inaction and subsequent attempts by the court to spur it to take sufficient actions to vindicate its claimed interest in the litigation. I therefore respectfully recommend that the court dismiss this action pursuant to Federal Rule of Civil Procedure ("Rule") 41(b).

I.     Background

The government filed the Complaint on July 7, 2008. It then permitted the case to lay dormant for more than six months. On January 27, 2009, I issued the following order:

> A review of the docket entries in this action indicates that there has been no activity in this case since a summons was returned executed on August 21, 2008 (docket entry 4). No later than February 27, 2009, one of the following events must occur: (a) the defendants must file an answer, (b) the parties must file a stipulation extending the defendants' time to answer, or (c) the plaintiff must file a motion for the entry of a notation of default. If none of the preceding events

occurs by the deadline set forth above, I will deem the plaintiff to have abandoned the case and will promptly file a Report and Recommendation urging the assigned District Judge to dismiss the case for failure to prosecute. The plaintiff's counsel is directed to provide a copy of this order to his client and to the defendants.

DE 5.

The government immediately complied with that order by filing a motion for the entry of notations of default pursuant to Rule 55(a). DE 6. On April 29, 2009, the Clerk of the Court noted the defaults for all three defendants. DE 7; DE 8; DE 9. However, rather than taking the next appropriate step by filing a motion for the entry of default judgment pursuant to Rule 55(b), the government again let the case fall dormant. After eleven more months of inactivity, my case manager called the plaintiff's counsel on March 25, 2010 and, reaching his voice-mail, left a message. The government's counsel did not respond. A week later, my case manager called again, this time reached counsel, and was informed that the government would file its motion for default judgment by the end of April 2010. Notwithstanding that assurance, the government filed no such motion.

II. Discussion

A district court has the inherent power to manage its own affairs so as to achieve the orderly and expeditious disposition of cases. *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Consistent with that inherent authority, the Federal Rules of Civil Procedure explicitly empower a district court, in the exercise of its sound discretion, to dismiss an action "[i]f the plaintiff fails to prosecute[.]" Rule 41(b); *see Lewis*, 564 F.3d at 575 (noting that standard of review is abuse of discretion).

Because dismissal on such grounds is unquestionably a "harsh remedy" that should be used only in "extreme situations," *Lewis*, 564 F.3d at 576 (citations omitted), a court considering such an action should examine five factors. Specifically, the court should consider whether

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.

*Id.* (quoting *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)). No one factor is dispositive. *Id*. In weighing the five factors, the court must consider the record of the entire case as a whole. *Id*. A court may find the standard for dismissal satisfied where it finds a "pattern of dilatory conduct" or "an action lying dormant with no significant activity to move it." *Barahman v. Sullivan*, 1992 WL 226293, at *1 (E.D.N.Y. May 15, 1992) (citing *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982)).

All five factors weigh in favor of dismissal. First, the government has twice allowed its case to lie "dormant with no significant activity" for many months. *Id*. Second, its inaction has continued despite having been explicitly warned that such behavior could result in the dismissal of its claims and despite subsequent efforts by my case manager to spur the government's counsel to take appropriate action to protect the public interest. Third, applicable case law establishes a presumption that a plaintiff's unreasonable delay will normally prejudice the defendants. *See, e.g.*, *Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) (citing *Lyell Theatre Corp.*, 682 F.2d at 43).[1] Fourth, although the two years that the case has occupied the

---

[1] The weight of this factor is unquestionably lessened – but the presumption itself is not obliterated – by the fact that the defendants have defaulted. The defendants' default does not

court's docket is not an unduly long period of time for active litigation, there is no sign that the government will move this case forward in the future; moreover, the government's right to an opportunity for a day in court has been thoroughly vindicated – notwithstanding the fact that it has inexplicably squandered that opportunity. Finally, no lesser sanction than dismissal is likely to be effective in light of the government's failure to act despite my earlier order directing it to move the proceedings forward on pain of possible dismissal and its demonstrated unwillingness to heed subsequent reminders of its obligation to act. This factor weighs particularly heavily for dismissal here, since the government is an institutional actor that appears regularly before this court and is thus well aware of its responsibility to move the litigation forward.

I acknowledge that the government may protest that, now that it is more immediately confronted with the prospect of dismissal, it will of course take appropriate remedial action – a promise it has made and broken once already – and that allowing it an opportunity to do so is a more appropriate result than dismissal. Although I am sympathetic to that argument, I disagree with it for reasons similar to those that resulted in the dismissal of a procedurally similar case. In *Liberty Mut. Ins. Co. v. Bella Transp., Inc.*, 2009 WL 1606489 (E.D.N.Y. June 8, 2009), the court adopted my recommendation to dismiss the complaint where the plaintiff repeatedly allowed the case to lie dormant rather than responding to multiple invitations to secure a default

---

preclude the possibility that they will later seek to answer the complaint and vacate the default. *See State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (setting forth the standard for vacating an entry of default or default judgment pursuant to Rule 60(b)). If that happens, there would still be reason to presume prejudice to the defendants arising from the government's indolence "because delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Shannon*, 186 F.3d at 195.

judgment. Addressing the possibility that the court could take a less severe course of action, I explained that doing so would intolerably undermine its neutral role:

> If Liberty's failure to prosecute had, by virtue of the passage of time, put the defendants in a position in which they could not fairly defend themselves against the pending claims, some lesser sanction might well adequately address the harm. For example, the preclusion of evidence or an adverse inference instruction to the jury might level the playing field enough that both sides could still fairly litigate the claims on the merits. If that were the case, I would not recommend dismissal here. But Liberty's failure to prosecute has had the effect of precluding any resolution of the case at all, and it is therefore not amenable to such remedial measures. The problem here is not so much that Liberty has been acting slowly, but that it has not been acting at all except when prodded, cajoled, or commanded by the court. In light of the history of this case since the dismissal of the first Complaint – which was itself due in part to Liberty's failure to prosecute – it appears that Liberty's inertia will continue unless and until the court prods it to action once again. As a result, any lesser sanction that allows Liberty to proceed with its claims at this stage necessarily undermines the court's impartial role. Just as it is not the court's responsibility to ensure that the defendants consult counsel and answer the complaint, it is not – and must not become – this court's job to ensure that Liberty is protected against its own lapses. If the court takes on such an obligation, it will implicitly be taking sides in the legal dispute between Liberty and the defendants.
>
> The difficulty, of course, is determining whether the court may – and must, consistent with the second *Drake* factor – continue to prod Liberty to action by warning it of the possibility of dismissal for failure to prosecute, or whether instead the proceedings have reached the point where such continued warnings fundamentally alter the court's neutral role. I believe that in light of the extensive delays and warnings described above, we have finally reached the latter point. I therefore conclude that while some sanction short of dismissal might indeed suffice to break through Liberty's inertia, any such lesser sanction would be detrimental to the court's integrity as an institution for the fair resolution of legal disputes.

*Id*. at * 11.

I conclude that the same rationale favors dismissal here. The government has unquestionably been on actual notice that it needed to file a motion for default judgment to protect its claimed interest in the litigation, and has nevertheless failed to act. Allowing this

report and recommendation to serve as a warning that further inaction by the government might cause it to lose this case, rather than as an explanation of why it has already done so, would undermine the authority of court orders and would give the government an unfair advantage over its adversary.

III. Recommendation

For the reasons set forth above, I respectfully recommend that the court dismiss all claims asserted by plaintiff United States of America for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Any objections to this Report and Recommendation must be filed no later than June 21, 2010. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

**SO ORDERED.**

Dated: Brooklyn, New York
June 7, 2010

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge