UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X

UNITED STATES OF AMERICA,

                Plaintiff,

    -against-

IRVING GELLERSTEIN,
NORMA GELLERSTEIN, and
IRENE GREENFEDER,

                Defendants.

---------------------------------------- X

**MEMORANDUM AND ORDER**

08-CV-2702 (KAM)(JO)

**MATSUMOTO, United States District Judge:**

        Plaintiff United States of America (the "government")
brought an action seeking a monetary judgment based on the
failure of defendants Irving Gellerstein, Norma Gellerstein, and
Irene Greenfeder (the "defendants") to pay federal taxes. (ECF
No. 1, Compl.) Before the court is the Report and
Recommendation ("R&R") issued by Magistrate Judge James
Orenstein on June 7, 2010, which *sua sponte* recommends dismissal
of the action for failure to prosecute pursuant to Federal Rule
of Civil Procedure 41(b) ("Rule 41"). (ECF No. 10, R&R at 1,
6.) On June 21, 2010, the government timely filed objections to
the R&R. (*See generally* ECF No. 12, Objection to Report and
Recommendation ("Obj.").) Upon a *de novo* review of the record,
the R&R, and the government's timely objections, the court
respectfully declines to adopt the R&R.

**BACKGROUND**

The government filed the complaint in this action on
July 7, 2008, seeking to reduce to judgment assessed and unpaid
federal tax liabilities of defendants pursuant to 26 U.S.C.
Section 6672. (ECF No. 1, Compl.) Summonses to all three
defendants were returned executed in July and August 2008. (ECF
No. 2, Executed Summons as to Norma Gellerstein; ECF No. 3,
Executed Summons as to Irving Gellerstein; ECF No. 4, Executed
Summons as to Irene Greenfeder.) For the next five months,
between the return of the last summons on August 21, 2008 and a
court order entered on January 27, 2009, no action appeared on
the docket in this case (the "first dormant period").

Despite the lack of activity on the docket, the
government has reported for the first time in its objections
that it engaged in unsuccessful settlement negotiations during
this first dormant period.[1] (*See* Obj. at 1-2.) Specifically, at

---

[1]    This court is cognizant of the general rule that "[c]onsiderations of
efficiency and fairness militate in favor" of requiring a full evidentiary
submission for the Magistrate Judge's consideration." *See*, *e.g.*, *Hynes v.
Squillace*, 143 F.3d 653, 656 (2d Cir. 1998) (citations omitted). However,
upon this court's *de novo* review, both the applicable statute and the rule
explicitly provide this court with the discretion to "consider evidence that
had not been submitted to the Magistrate Judge." *Id.* (*citing* 28 U.S.C. §
636(b)(1) (providing that district "judge may also receive further evidence .
. . ." upon *de novo* review); *and* Fed. R. Civ. P. 72(b) ("The district judge
to whom the case is assigned shall make a de novo determination upon the
record, or after additional evidence, of any portion of the magistrate
judge's disposition to which specific written objection has been made . . .
.")).  In light of the *sua sponte* issuance of the R&R in this case, the court
notes that the government has not had a prior opportunity to present the
facts it now sets forth in its objections to the R&R.  Correspondingly, the

some point after service on the defendants, the government

reports receiving a call from defendant Norma Gellerstein ("Ms.

Gellerstein"). (*See id.*) During that call, counsel for the

government urged Ms. Gellerstein to hire an attorney for herself

and her husband, Irving Gellerstein ("Mr. Gellerstein")

(together, "the Gellersteins"), and to furnish the government

with financial data so that the government could evaluate the

possibility of a settlement based on uncollectability. (*Id.*)

In response, Ms. Gellerstein reportedly stated that she would

consider settling the matter. (*Id.*) However, Ms. Gellerstein

never followed up with the financial data necessary for the

government to make a settlement offer. (*Id.*)

On January 27, 2009, Judge Orenstein appropriately

issued the following order:

> A review of the docket entries in this
> action indicates that there has been no
> activity in this case since a summons was
> returned executed on August 21, 2008 (docket
> entry 4). No later than February 27, 2009,
> one of the following events must occur: (a)
> the defendant must file an answer, (b) the
> parties must file a stipulation extending
> the defendants' time to answer, or (c) the
> plaintiff must file a motion for the entry

---

court notes that Judge Orenstein did not have any opportunity to fairly
consider these facts and circumstances when formulating the R&R. Nor did
plaintiff seek reconsideration to present such facts. Accordingly, in the
course of its *de novo* review of the record, this court exercises its
discretion to allow the supplementation of the record and will consider the
additional facts now set forth by the government. *See Hynes*, 143 F.3d at
656.

> of a notation of default. If none of the
> preceding events occurs by the deadline set
> forth above, I will deem the plaintiff to
> have abandoned the case and will promptly
> file a Report and Recommendation urging the
> assigned District Judge to dismiss the case
> for failure to prosecute. The plaintiff's
> counsel is directed to provide a copy of
> this order to his client and to the
> defendants.

(ECF No. 5, January 27, 2009 Order.) On that same day, the

government complied with Judge Orenstein's Order and filed a

motion for the entry of notation of default against defendants

pursuant to Rule 55(a). (ECF No. 6, Mot. for Entry of Default.)

On April 29, 2009, the Clerk of the Court noted the default of

each defendant. (ECF No. 7, Entry of Default as to Norma

Gellerstein; ECF No. 8, Entry of Default as to Irving

Gellerstein; ECF No. 9, Entry of Default as to Irene

Greenfeder.) Over the course of the next eleven months, the

docket reflects no further action by the government (the "second

dormant period").

Yet while the docket again reflects inactivity, again

for the first time in its objections the government reports that

further settlement attempts occurred during this second dormant

period. Specifically, the government reports receiving two

phone calls in early 2010 regarding the possibility of a

settlement with the Gellersteins. (Obj. at 2-3.) First, on

February 23, 2010, the government received a call from an individual identifying himself as a prospective attorney for the Gellersteins. (*Id.* at 2.) Although the government informed the attorney that the government would still entertain settlement offers based on uncollectability, the attorney did not contact the government again. (*Id.* at 2.) Second, on March 19, 2010, the government received another call from Ms. Gellerstein who informed the government that the Gellersteins were planning to sell their house and relocate to Florida. (*Id.* at 2-3.) In light of the anticipated sale, the government again urged Ms. Gellerstein to provide the financial data necessary to move forward with a potential settlement. (*Id.* at 2-3.)

Between the February 23, 2010 and the March 19, 2010 telephone conversations the government also took steps to secure the affidavits of debt from the Internal Revenue Service ("IRS affidavits") which would be necessary to support a motion for default judgment against defendants. (*Id.* at 2.) However, when the government's counsel received drafts of the IRS affidavits, he "determined that he needed to set aside significant time" to help revise them before the government could move for default judgment. (*Id.* at 3.) The government's counsel did not immediately have sufficient time for that task due to time conflicts and travel related to other cases. (*Id.*)

On March 25, 2010, Judge Orenstein's case manager contacted the government's counsel and left a message on his voicemail, which went unreturned. (R&R at 2.) One week later, Judge Orenstein's case manager placed a second telephone call and this time reached the government's counsel. (*Id.*) During that call, the government's counsel informed Judge Orenstein's case manager that the government expected to file its motion for default judgment against defendants by the end of April 2010. (*Id.*)

Yet the government did not move for default judgment as expected by the end of April 2010, and the docket reflected no further activity in this case. However, for the first time in the objections to the R&R, the government has detailed certain forces beyond the government's control which prevented the government from moving for default judgment, as promised, by the end of April 2010. (*See* Obj. at 3-4.) Specifically, counsel for the government stated that he was unable to devote the significant time necessary to revise the IRS affidavits due to scheduling conflicts with other cases and work-related travel which required counsel's absence from the office for a period of more than two weeks during April and May of 2010. (*Id.* at 3.) Further, counsel for the government described how he was unable to work on the IRS affidavits during the time he had set aside

for the task because one of his children became ill and had to
be hospitalized for nearly two weeks, during which time counsel
was out of the office for several days caring for his other
children. (*Id.* at 3-4.) Further, even after his child was
released from the hospital, the government's counsel stated that
he was further delayed from devoting the necessary attention to
the IRS affidavits because he needed to take additional time off
to care for his sick daughter and because of the demands of
other cases. (*Id.*)

Meanwhile, having received no motion for default
judgment from the government by the end of April 2010 as
promised, and absent any indication from the government as to
when such motion would be filed, on June 7, 2010, Judge
Orenstein *sua sponte* issued an R&R addressing whether the
complaint should be dismissed for failure to prosecute pursuant
to Rule 41. (R&R at 1, 5-6.) In the R&R, Judge Orenstein
applied the relevant five factor test used by district courts to
determine whether to dismiss a case for failure to prosecute
under Rule 41. (*Id.* at 3-6.) Judge Orenstein found that all
five of these factors weighed in favor of dismissal under Rule
41, and he accordingly recommended that the complaint be
dismissed for failure to prosecute. (*Id.*)

On June 10, 2010, three days after the issuance of the

R&R, the government filed a motion for default judgment pursuant
to Federal Rule of Civil Procedure 55(b)(1). (ECF No. 11, Mot.
for Default J.) On June 21, 2010, the government timely
objected to the R&R asserting that a careful examination of the
"underlying facts and circumstances of this case and an analysis
of the five factors" which guide courts' discretion in deciding
whether to dismiss a case for failure to prosecute reveals that
the drastic sanction of dismissal is unwarranted in this case.
(*See generally* Obj. at 10.) Accordingly, the government
requested that this court decline to adopt the R&R and allow the
Clerk of the Court to perform the ministerial task of entering a
default judgment. (*See id*.)

## STANDARD OF REVIEW

In reviewing an R&R, the district court "may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1)(C). Where, as here, a party makes specific
objections to a magistrate judge's findings, the court must make
a *de novo* determination. *See, e.g.*, *United States v. Male
Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).

## DISCUSSION

In light of the government's timely objections, the

court has undertaken a *de novo* review of the full record including the applicable law, the R&R, and the government's objections to the R&R. *See* 28 U.S.C. § 636(b)(1)(C).

## A. Legal Standard

A district court is empowered to involuntarily dismiss a complaint for failure to prosecute. *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009). That power is grounded in the district court's inherent authority to manage its own affairs so as to dispose of cases in an orderly and expeditious manner, and it is explicitly sanctioned in Rule 41. *Id.* at 569.

However, the power to dismiss a case for failure to prosecute is a "harsh remedy to be utilized only in extreme situations." *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (internal quotation and citation omitted); *see also Lewis*, 564 F.3d at 576. As such, a district court's discretion in deciding whether to dismiss a case for failure to prosecute is limited by reference to the following five factors:

> Whether: (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of

lesser sanctions.

(the "*Drake* factors") *Drake*, 375 F.3d at 254 (citation omitted).
In applying these factors, no one factor is dispositive and the
court must instead consider the record as a whole.   *Id.*

**B. Application**

Considering each of the *Drake* factors in turn on the
enhanced factual record now before the court, the court
respectfully finds that together, the *Drake* factors weigh
against dismissal of this action for failure to prosecute.

1. Whether Plaintiff's Failures to Prosecute Caused a Delay
   of Significant Duration

The first *Drake* factor requires a court to consider
both "whether the failures to prosecute were those of the
plaintiff" and "whether these failures were of significant
duration." *Drake*, 375 F.3d at 255 (citation omitted).  Judge
Orenstein answered this inquiry in the affirmative, finding that
the first *Drake* factor weighed in favor of dismissal because the
government "allowed its case to lie 'dormant with no significant
activity' for many months." (R&R at 3 (citation omitted in
original).)  The government objects to this finding by
essentially disputing that the failure to prosecute was solely
attributable to the government.  (Obj. at 7.)  Specifically, the
government argues that although not reflected on the docket, the

delay is partly attributable to the government's joint

settlement discussions with defendants during the dormant

periods, and further, that "circumstances beyond [the

government's] control," including problems finalizing the IRS

affidavits, scheduling conflicts, and a family medical

emergency, also contributed to the delays and prevented the

government from moving for default judgment by the end of April

2010 as promised to Judge Orenstein's case manager.  (*Id.*)

  Certainly, there can be no dispute that the R&R

correctly found that the government at least twice inexplicably

"allowed its case to lie dormant" for periods of many months,

thus resulting in significant delays.  (*See* R&R at 3.)  Indeed,

even taking into account the additional facts first presented in

the government's objections – and which were unavailable to

Judge Orenstein in formulating the R&R – there nonetheless

appear to be significant periods of unexplained delay throughout

the history of this case.  Specifically, during the first

dormant period the government allowed up to five months[2] to pass

following its first settlement conversation with Ms. Gellerstein

before taking further action in this case in January 2009, and

then did so only in response to court order.  Further, during

---

[2] The precise number of months that the case was inactive during the
first dormant period is unknown because the objections do not provide dates
for all of the conversations between Ms. Gellerstein and the government.

the second dormant period, another nine months passed after the notation of default in April 2009 with no further government action until further settlement conversations occurred in February 2010, and then only when initiated by defendants.

Despite these unquestionable delays attributable to the government, however, the additional facts and circumstances presented in the government's objections provide reasons for the delays which were not previously apparent from the court record available to Judge Orenstein at the time he formulated the R&R. Thus, some reasonable delay may be attributed to the government's good faith settlement efforts with the Gellersteins, which might have obviated the need for further judicial intervention in this case. Further delay occurred when, after concluding in the spring of 2010 that such settlement efforts would ultimately be unsuccessful, the government immediately took steps to prepare its motion for default judgment by soliciting the necessary IRS affidavits but unexpectedly discovered that the affidavits required time-consuming revisions by government counsel. Finally, the government explained that further delay resulted from unforeseeable events beyond the government's control, particularly including the serious illness of the government counsel's child.

On this record, the court agrees that there were significant delays in the prosecution of this action which can only be attributed to the government.  However, the additional extra-record explanations for the delays – presented for the first time in the government's objections – indicate that under the entirety of the circumstances of this case the government's failure to move for default judgment was not the result of neglect or abandonment of its claims, notwithstanding that an unreasonable delay of significant duration resulted. Accordingly, on the enhanced factual record now before the court, the court respectfully finds that the first *Drake* factor is neutral, or at best, weighs only slightly in favor of dismissal.

2. Whether the Government Was Given Adequate Notice That Further Delay Would Lead to Dismissal.

Under the second *Drake* factor regarding notice, a court must provide a plaintiff with notice "that further delays would result in dismissal." *Drake*, 375 F.3d at 255 (*quoting Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001)).  In applying this factor, the R&R found that the government "has unquestionably been on actual notice that it needed to file a motion for default judgment to protect its claimed interest in the litigation." (R&R at 5.)  The government objects that in

13

fact it "was not given notice that further delay would result in dismissal." (Obj. at 7-8.)

Here, the government certainly received an explicit warning from Judge Orenstein's January 27, 2009 order that dismissal would result if, by a date certain, the defendants failed to answer or the government failed to file a joint stipulation or a motion for the entry of a notation of default. On January 27, 2009, however, the government complied with that order by filing for notation of default, and no dismissal occurred. Subsequently, the record does not reflect any warning to the government that the failure to file the motion for entry of default judgment by a particular date certain would lead to the dismissal of the complaint. Thus, there is no order on the docket reflecting such a warning, and similarly, no indication in the docket or the R&R that Judge Orenstein's case manager conveyed such a warning during either of her phone calls to government counsel in the spring of 2010.

Undoubtedly, as the R&R correctly points out and the government aptly acknowledges, a court's role as a neutral arbiter of the litigation is not to prod, prompt, or cajole a plaintiff into vindicating that plaintiff's own interest in the litigation commenced by plaintiff. However, on the record

14

before the court and the applicable case law, the court must respectfully find that under the second *Drake* factor, the government did not receive sufficient notice in the form of an order to show cause or otherwise, that failure to file a motion for default judgment would lead to dismissal of the government's claims. *Cf. Liberty Mut. Ins. Co. v. Bella Transp., Inc.*, 2009 WL 1606489, at *4-6. (E.D.N.Y. June 8, 2009) (recommending that court deny plaintiff's motions for default judgment and dismiss plaintiff's claims for failure to prosecute under Rule 41 after plaintiff failed to adequately respond to multiple orders to show cause and repeatedly failed to take promised prompt action to move case forward).

Accordingly, absent sufficient notice that failure to file a motion for default judgment or any further delay would lead to dismissal of the government's claims, the court respectfully finds that the second factor weighs against dismissal of this action. *See Martens*, 273 F.3d at 181 (finding that notice factor weighs against dismissal where "district court did not give the individual plaintiffs express notice that further delays would result in dismissal" and instead only provided notice that plaintiffs' "claims could be dismissed on the basis of the applicable statute of limitations or pursuant to the

doctrine of laches"); *see also Drake*, 375 F.3d at 255

(finding notice factor to weigh against dismissal where

plaintiff had not received "notice that [plaintiff's] case

would be dismissed if there was *further* delay") (emphasis

in original).

### 3. Whether the Government's Delay Substantially Prejudiced the Defendants

Under the third *Drake* factor, "[p]rejudice may be

presumed as a matter of law in certain cases, but the issue

turns on the degree to which the delay was lengthy and

inexcusable." *Drake*, 375 F.3d at 256 (citation omitted).

Thus, where "delay is more moderate or excusable, the need

to show actual prejudice is proportionally greater." *Id.*

(internal quotation and citation omitted). Further, the

presumption of prejudice is rebuttable. *Id.* at 257.

Applying this third *Drake* factor to the facts here, the R&R

noted that the government's delay triggered the presumption

of prejudice, and that the weight of this factor was

lessened but not eliminated by the fact of defendants'

default because the "default does not preclude the

possibility that [the defendants] will later seek to answer

the complaint and vacate the default." (R&R at 3-4.) The

government objects that far from prejudicing the

defendants, the delay in this case provided defendants with an opportunity pursue a settlement including a negotiated reduction in the judgment. (*Id.*)

Despite Judge Orenstein's valid concerns that a defendant who defaults but later seeks to vacate the default judgment may still be prejudiced – albeit less so – by a plaintiff's failure to prosecute, the circumstances of this case indicate that no such prejudice accrued where the defendants have in fact made no attempt to defend against the complaint. *See Liberty Mut. Ins. Co.*, 2009 WL 1606489, at *8 (noting that in some sense, a defendant who is unwilling or unable to contest a lawsuit cannot suffer prejudice when a plaintiff's failure to prosecute does nothing more than "postpone the date of the otherwise inevitable judgment against them"). Further, as first set forth in the government's objections to the R&R, the settlement negotiations attested to by the government further diminish any negligible prejudice accruing to defendants from the government's admitted delay in prosecuting this matter. Indeed, to the contrary, by raising the possibility that the defendants may have negotiated a reduced judgment, the delay actually accrued to defendants' benefit. (See Obj. at 8.)

Based on this record, including in particular the additional facts presented in the government's objections which reveal the parties' good faith settlement efforts not otherwise apparent on the court record, the court respectfully finds that the prejudice to defendants from the government's delay in this case is negligible, if any. Accordingly, the third *Drake* factor militates against dismissal.

4. Whether the Need to Alleviate Congestion in the Court's Calendar Was Carefully Balanced Against the Government's Right to Be Heard

Under the fourth *Drake* factor, "there must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas v. Miles*, 84 F.3d 532, 535-36 (2d Cir. 1996). Thus, if a plaintiff's failure to prosecute is "silent and unobtrusive rather than vexatious and burdensome," the delay does not burden the court sufficiently to warrant dismissal. *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 210 (2d Cir. 2001) (plaintiff's failure to make submissions required by the court, as opposed to swamping the court with "irrelevant or obstructionist filings," is not burdensome). However, a plaintiff whose inaction puts the court in a

position where it must waste time issuing multiple orders is "a burden on judicial resources." *Capellan v. Department of Homeland Sec.*, No. 06-CV-2551, 2008 WL 2512491, at *4 (S.D.N.Y. June 13, 2009).

In weighing this fourth *Drake* factor, the R&R acknowledged that the two years this case has been on the court's docket is not excessive for active litigation, but concluded that "there is no sign that the government will move this case forward in the future." (R&R at 3-4.) The government objects that such a finding is "simply unsupported by the facts" given the various extra-record facts presented by the government in its objections to the R&R and discussed at length above. (Obj. at 8-9.)

Upon this court's *de novo* review of the record as a whole, including those facts and circumstances presented for the first time in the government's objections (and previously unknown to Judge Orenstein), this court respectfully agrees with the government. Thus, the government's prompt response to prior court orders coupled with these additional facts and circumstances, including the government's repeated settlement efforts, ongoing pursuit of the required IRS affidavits, and the forces beyond its control such as the serious illness of the government counsel's child, provide ample indication that the

government imminently intended to "move the case forward." (*Cf.* R&R at 4.) Indeed, just three days after the issuance of the R&R, the government filed its motion for default judgment. Moreover, as implicitly noted by the R&R, the government's delay in prosecuting this matter did not have an extreme effect on the court congestion or involve vexatious or obstructionist filings.

Absent an extreme effect on the court's calendar and given these extra-record facts of the government's willingness and efforts to move toward judgment or settlement, this court respectfully finds that the fourth *Drake* factor weighs against dismissal.

5. <u>Whether the Efficacy of Lesser Sanctions Has Been Adequately Explored</u>

The fifth and final *Drake* factor requires a court to consider "whether lesser sanctions would have been sufficient to remedy any prejudice resulting from plaintiff's delay." *Drake*, 375 F.3d at 257.

In considering the possibility of lesser sanctions under the fifth *Drake* factor, Judge Orenstein relied upon a "procedurally similar" case, *Liberty Mutual,* 2009 WL 1606489, which dismissed an action for failure to prosecute following "extensive delays and multiple warnings" to the plaintiff. (R&R at 4-5 (citing 2009 WL 1606489, at *11).) Judge Orenstein found

that just as in *Liberty Mutual*, the fifth *Drake* factor here
required dismissal because the court would otherwise be
implicitly taking the government's side and undermining the
court's impartial role in the litigation by unduly protecting
the government from its own failure to prosecute this action.
(*Id.*) Judge Orenstein further found that this factor weighed
"particularly heavily for dismissal" given the government's
status as an institutional actor regularly appearing before this
court. (R&R at 4.) Thus, Judge Orenstein concluded that any
sanction short of dismissal would not only be ineffective, but
would undermine the court's impartial role and unfairly
advantage the government. (R&R at 5-6.) The government asserts
that no sanction was necessary at all here given the
government's history of compliance with direct court orders and
the additional facts and circumstances presented in the
objections showing that the government was already in the
process of preparing its motion for default judgment. Thus,
without the need for the extreme sanction of dismissal for
failure to prosecute, the government argues that the record
indicates that any court order requiring the filing of a motion
for default judgment by a date certain would have been met with
the government's prompt compliance or a timely letter offering
an explanation for any delay in compliance. (Obj. at 9.)

At the outset, where, as here, the prejudice to defendants resulting from a plaintiff's failure to prosecute is minimal or nonexistent, the level of sanction necessary to compensate for such prejudice is concomitantly lessened. *See Drake*, 375 F.3d at 257. Thus in such a case, the "harsh" and "extreme" remedy of dismissal appears disproportionate to the level of prejudice endured by defendants, who in this case, were unlikely to have been prejudiced, but in fact, likely benefited from the settlement negotiations which partly contributed to the delay in prosecuting the government's case and postponed the inevitable judgment against defendants. *See id.* at 254.

Moreover, the court finds that *Liberty Mutual*, 2009 WL 160648, relied upon by Judge Orenstein, is factually distinct from the record here. Thus, unlike in *Liberty Mutual*, where the plaintiffs received numerous warnings about its delays,[3] here Judge Orenstein issued only one order explicitly warning the government that it faced dismissal if it failed to file a motion

---

[3]     For example, in *Liberty Mutual*, the warnings included: (1) an order to show cause why the complaint should not be dismissed for failure to comply with a previous order and with Local Civil Rule 7.1, (2) leave to amend the complaint when the court adopted a Report and Recommendation to dismiss the complaint, (3) another order to show cause, "in an abundance of caution," why the amended complaint should not be dismissed, and (4) a third order to show cause to provide plaintiffs "one more chance" to address procedural issues after the plaintiff's submission "made no attempt to explain its lapses or show cause why the case should not be dismissed."  2009 WL 1606489, at *4-6. Only after the plaintiffs did not adequately respond to the third order to show cause and again failed for more than three weeks to take the promised prompt action to move their case forward, did the court in *Liberty Mutual* adopt the Report and Recommendation that the case be dismissed for failure to prosecute.  *See id* at *1, *7, *11.

for notation of default, and the government promptly complied with that order. As discussed above, here no further warnings were issued to notify the government that a failure by the government to file the subsequent motion for entry of default judgment by an unidentified date certain would result in dismissal. Accordingly, the valid rationale underlying the result in *Liberty Mutual* does not apply here. *Cf. Liberty Mut. Ins. Co.*, 2009 WL 1606489.

Given the minimal prejudice – if any – which accrued to defendants in this action and the government's prior compliance with a court order requiring action by a date certain, the court respectfully finds that the lesser sanction of an order to show cause why the case should not be dismissed for failure to prosecute would have sufficiently avoided any additional unnecessary delay, provided sufficient notice to the government that the harsh sanction of dismissal would result absent prompt action, alleviated any court congestion, and sufficiently compensated defendants for the minimal prejudice they experienced while still protecting this court's valid interest in remaining the neutral arbiter of the litigation. The court therefore respectfully finds that the fifth *Drake* factor weighs against dismissal.

**CONCLUSION**

This court has carefully considered Judge Orenstein's well-reasoned R&R in the context of the additional facts and circumstances first made available to the court in the government's objections to the R&R. In light of these additional facts and circumstances, particularly, the previously unknown facts regarding the serious illness suffered by government counsel's child which delayed the government's ability to timely file the motion for default judgment in this case, the court respectfully finds that together, the five *Drake* factors weigh against dismissal of this action for failure to prosecute. Thus, with deep appreciation for Judge Orenstein's careful analysis and the valid concerns discussed in the R&R, and noting that perhaps Judge Orenstein's own analysis may have concluded differently had the government presented the additional facts here on a motion for reconsideration of the R&R, this court respectfully concludes on the enhanced factual record now before it that dismissal is too harsh a penalty under the circumstances of this case. *See Drake*, 375 F.3d at 258 ("The circumstances of this case simply do not rise to the level needed to justify outright dismissal.") The court therefore respectfully declines to adopt the R&R.

Accordingly, by February 23, 2011, the government

shall serve a copy of this Memorandum and Order on defendants and file a declaration of service via ECF.  Further, by no later than March 18, 2011, the government shall file revised affidavits of debt from the IRS so that the court may consider the government's pending motion for entry of default judgment. Finally, the government is hereby placed on actual notice that any failure to comply with these deadlines shall result in immediate dismissal of this complaint for failure to prosecute this action pursuant to Rule 41.

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 22, 2011

                              _____ /s/_____
                              Kiyo A. Matsumoto
                              United States District Judge